◼ DIANE KIRKER et al., Appellants, v THOMAS C. NICOLLA, JR., Doing Business as WORK ASSESSMENT AND CONDITIONING CENTER OF EASTERN NEW YORK, et al., Respondents. [681 NYS2d 689] —Spain, J. Appeal from an order and judgment of the Supreme Court (Reilly, Jr., J.), entered October 16, 1997 in Schenectady County, upon a dismissal of the complaint at the close of plaintiffs' case.

On November 12, 1992 plaintiff Diane Kirker (hereinafter plaintiff) underwent two surgical procedures in the form of a breast biopsy performed by Roger Malebranche and a gastrointestinal bypass which was performed by Oscar Lirio. Approximately six weeks after the procedures, plaintiff returned to work as a security guard at Schenectady International (hereinafter the employer) where she had been employed as a custodian prior to the surgery. The change in plaintiff's job status from custodian to security guard was requested because Lirio advised petitioner that although she could return to work, she should engage only in light duty not requiring her to lift more than 50 pounds.

Shortly after plaintiff returned to work, plaintiff asked her employer if she could resume her custodial job because she was earning less money as a security guard. Plaintiff's employer required that plaintiff undergo an evaluation by the Work Assessment and Conditioning Center of Eastern New York (hereinafter Work Assessment) in the Town of Colonie, Albany County. The evaluation's purpose was to determine whether plaintiff was capable of returning to work and performing her normal job duties without risk of injury. The evaluation was performed on January 4, 1993 by defendant Barbara Bureau, a licensed physical therapist specializing in industrial rehabilitation. Plaintiff's evaluation included a strength test to determine the amount of force she was able to exert with her arms, legs and torso. Based upon the results of the evaluation, plaintiff was permitted to return to work as a custodian on the same day.

In February 1993, plaintiff noticed a bulge just above her navel which was subsequently diagnosed as two hernias. Thereafter, plaintiff, and her husband by a derivative claim, commenced this action against defendants alleging that they were negligent in the performance of the work assessment evaluation and that this negligence was the cause of plaintiff's injuries. A trial was held and, at the conclusion of plaintiffs' case, defendants moved to dismiss the complaint on the ground that plaintiffs failed to establish a prima facie case of defendants' negligence. Defendants argued that there was no proof that they had violated any applicable standard of care and, further, that there was no evidence proffered regarding a causal connection between plaintiff's injury and defendants' conduct. Supreme Court determined that plaintiffs failed to present prima facie proof of the standards of care in the physical therapy/work assessment field or any deviation from those standards and therefore granted the motion dismissing plaintiffs' complaint. Plaintiffs appeal.

We now affirm. Initially, we reject plaintiffs' contention that Supreme Court erred in not permitting certain opinion testimony by Lirio and Malebranche regarding defendants' evaluation of plaintiff. It is undisputed that Supreme Court properly concluded that this was an action sounding in professional malpractice which required evidence of a deviation from accepted standards of practice in order to prove negligence (*see, Post & Co. v Sidney Bitterman, Inc.*, 219 AD2d 214, 223; *Georgetti v United Hosp. Med. Ctr.*, 204 AD2d 271, 272). Therefore, before expert testimony could be admitted, it was incumbent upon plaintiffs to set forth that the experts possessed the

requisite skill, training, education, knowledge or experience to render such opinions (*see, Matott v Ward*, 48 NY2d 455, 459). Here, the record reveals that Lirio and Malebranche were asked to state with a reasonable degree of medical certainty whether the tests administered by Bureau to plaintiff could have caused the postoperative ventral hernia. Plaintiffs' expert witnesses, however, were both treating surgeons and neither had any training or experience in the fields of physical therapy or work assessment, and neither was licensed as a physical therapist. Without proper foundation, the treating surgeons were not qualified to provide testimony as to the standards of care in the work assessment or physical therapy profession (*see, Matott v Ward, supra*). Further, plaintiffs failed to lay a proper foundation to allow the experts to render any opinions as to whether defendants "caused" plaintiff's injury, or that there was any breach or deviation from the standard of care provided in the work assessment industry. Moreover, the record reveals that the experts were asked to offer an opinion on evidence not contained within the record. An expert cannot reach a conclusion by reliance on a " ' " 'contingent, speculative or merely possible' " ' " foundation of material facts (*Neidert v Austin S. Edgar, Inc.*, 204 AD2d 1030, 1031). Upon review of the entire record, we find no reason to disturb Supreme Court's determinations.

We also conclude that Supreme Court properly denied plaintiffs' use of a reference manual to impeach Bureau. The record reveals that plaintiffs, during their direct examination of Bureau, attempted to examine her with regard to a seminar syllabus prepared by Keith Blankenship pertaining to the field of industrial rehabilitation. Defendants objected on the ground that the syllabus on which plaintiffs relied was a hearsay document and therefore not admissible. Supreme Court sustained the objection and plaintiffs were thus precluded from using the syllabus at trial. Generally, a scientific book or report must be excluded as hearsay if it is offered as proof of the facts asserted therein (*see, People v Riccardi*, 285 NY 21). A passage from such a book or report, however, may be introduced if done so on cross-examination of an expert for the purposes of impeaching an expert (*see, e.g., Fridovich v Meinhardt*, 247 AD2d 791, 792; *see also, Mark v Colgate Univ.*, 53 AD2d 884, 886). Although the expert need not admit having read the book or report, a proper foundation will not exist for such an examination unless the expert concedes the authoritativeness of such book or report (*see, Mark v Colgate Univ., supra*, at 886).

Here, plaintiffs attempted to use the Blankenship syllabus

during Bureau's direct examination which clearly violates the requirement that such use occur only on cross-examination. Further, although Bureau acknowledged that Blankenship was cited on a form used by defendants in doing assessments and that she attended his lectures, she testified that she did not consider Blankenship an authority in the area of industrial rehabilitation therapy. In our view, plaintiffs failed to establish a proper foundation and defendants' objection was therefore properly sustained.

Cardona, P. J., Mercure, White and Carpinello, JJ., concur. Ordered that the order and judgment is affirmed, with costs.